# UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.  MJ23-207 |
| A red Apple iPhone 13 and a black Apple iPhone 8+ seized from De'Ondre Lamontia Phillips | ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated herein by reference

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371, 922(a)(6), 932(b)(1), 933(a); 924(c); and 922(g)(1); and 21 U.S.C. 841(a). | Conspiracy; False Statements; Straw Purchasing of Firearms; Trafficking in Firearms; Possession of Firearm in Furtherance of Drug Trafficking Crime; Unlawful Possession of Firearms; and Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

✓ See Affidavit of Special Agent Catherine Cole continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

CATHERINE COLE
Digitally signed by CATHERINE COLE
Date: 2023.05.02 11:36:31 -07'00'

*Applicant's signature*

Catherine Cole, Special Agent, ATF
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 05/05/2023 _____

*Judge's signature*

City and state:  Seattle, Washington

S. Kate Vaughan, United States Magistrate Judge
*Printed name and title*

## <u>ATTACHMENT A</u>

### Description of Property to be Searched

A red Apple iPhone 13 smartphone, seized from the person of De'Ondre Lamotia Phillips on April 12, 2023; and


A black Apple iPhone 8+ smartphone, seized from the residence of De'Ondre Lamotia Phillips on April 12, 2023.

**ATTACHMENT B**

**List of Items to be Searched For and Seized**

From the subject smartphones, the government is authorized to search for and seize all records relating to the following offenses: Conspiracy, in violation of Title 18, United States Code, Section 371; False Statements in Connection with the Acquisition of Firearms, in violation of Title 18, United States Code, Section 922(a)(6); Straw Purchasing of Firearms, in violation of Title 18, United States Code, Section 932(b)(1); Trafficking in Firearms, in violation of Title 18, United States Code, Sections 933(a)(1) and (a)(2); Possession of Controlled Substances with Intent to Distribute, in violation of Title 21, United States Code, Section 841(a)(1); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c); and Unlawful Possession of Firearms, in violation of Title 18, United States Code, Section 922(g)(1); involving DE'ONDRE LAMONTIA PHILLIPS and DION JAMAR COOPER and occurring from June 2021 through the present, specifically:

Smartphones and wireless communications devices may be searched for:

i.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

ii.     Stored list of recent received, sent, or missed calls;

iii.     Stored contact information;

iv.     Photographs and videos of firearms and controlled substances, and photographs and videos that may show the user of the phone and/or co-conspirators, including any embedded GPS data associated with these photographs or videos;

v.     Stored and active text or chat messages related to firearms and controlled substances, including Apple iMessages, Facebook Messenger, Snapchat, Whatsapp, Signal, or other similar messaging services where the data is stored on the telephone;

vi.     Communications between PHILLIPS, COOPER and other persons relating to firearms possession, purchases, and sales, and drug trafficking and controlled substances;

vii.    Records relating to firearms or firearm transactions;

viii.   Records indicating state of mind regarding aforementioned crimes of investigation, including knowledge of another person's ineligibility to possess or purchase firearms; and

ix.     Records showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# AFFIDAVIT

STATE OF WASHINGTON )
                    ) ss
COUNTY OF KING      )

I, Catherine Cole, being first duly sworn on oath, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

I am a Special Agent with the United States Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since December 29, 2013. I am currently assigned to the Seattle Field Division in Seattle, Washington where I am assigned to the Seattle V Field Office. In this capacity, I enforce federal criminal laws relating to the unlawful possession, use and trafficking of firearms. I also investigate individuals who illegally use firearms to commit violent crimes.

Prior to my employment with ATF, I obtained bachelors' degrees in Political Science with a concentration on international relations and French from Tulane University in New Orleans, Louisiana, and a master's degree in Natural Resources Law Studies from the University of Denver College of Law in Denver, Colorado.

I received formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, Criminal Investigators Training Program, which familiarized me with basic narcotic investigations, drug identification and detection, United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition, I successfully completed a fourteen-week ATF Special Agent Basic Training course in Glynco, Georgia, which included comprehensive,

AFFIDAVIT OF CATHERINE COLE – Page 1
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1 formalized instruction in, among other things: firearms identification, firearms

2 trafficking, arson and explosives, and tobacco and alcohol diversion.

3      I have also received several hours of specialized training in surveillance

4 techniques, narcotics investigations, gang investigations, and am a certified Interstate

5 Firearms and Ammunition Nexus Expert, who has been trained in the recognition of

6 firearms and ammunition and their origin of manufacture. In this capacity, I have

7 received formal training for law enforcement personnel in both a general and specific

8 nature as it pertains to the recognition and identification of firearms and ammunition and

9 their place of manufacture. This training includes, but is not limited to, the Criminal

10 Investigator Training Program, Federal Law Enforcement Training Center, Special Agent

11 Basic Training, ATF National Academy, with emphasis on the Gun Control Act (GCA)

12 and the National Firearms Act (NFA) and the recognition of firearms pertaining to each,

13 Firearms Interstate Nexus Training, Advanced Ammunition Nexus Training, and the

14 touring of firearms manufacturing plants and ammunition manufacturing plants. I have

15 also personally toured and examined the ATF Firearms and Ammunition Technology

16 Branch's Reference Collection, located in Martinsburg, West Virginia, which includes an

17 inventory of approximately 13,000 firearms.

18 <u>**NATURE OF SEARCH WARRANT REQUESTED**</u>

19      The applied-for warrant relates to the investigation of De'Ondre Lamontia Phillips

20 and Dion Jamar Cooper, who conspired together to conduct straw purchases of firearms

21 and to traffic in firearms. In addition, Phillips engaged in drug trafficking and related

22 firearms offenses, and otherwise unlawfully possessed numerous firearms.

23      On April 17, 2023, a Complaint was filed in the Western District of Washington

24 charging Phillips and Cooper with various offenses related to their criminal activities.

25 *See* MJ23-174.

26      On May 3, 2023, an Indictment was filed charging Phillips and Cooper with the

27 following offenses: Conspiracy, in violation of Title 18, United States Code, Section 371;

28 False Statements in Connection with the Acquisition of Firearms, in violation of Title 18,

AFFIDAVIT OF CATHERINE COLE – Page 2
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  United States Code, Section 922(a)(6); Straw Purchasing of Firearms, in violation of

2  Title 18, United States Code, Section 932(b)(1); Trafficking in Firearms, in violation of

3  Title 18, United States Code, Sections 933(a)(1) and (a)(2); Possession of Controlled

4  Substances with Intent to Distribute, in violation of Title 21, United States Code,

5  Section 841(a)(1) (Phillips only); Possession of a Firearm in Furtherance of a Drug

6  Trafficking Crime, in violation of Title 18, United States Code, Section 924(c) (Phillips

7  only); and Unlawful Possession of Firearms, in violation of Title 18, United States Code,

8  Section 922(g)(1) (Phillips only).

9         This affidavit is submitted in support of an application for a search warrant

10  authorizing the search of a **red Apple iPhone 13** smartphone, seized from the person of

11  Phillips on April 12, 2023; and a **black Apple iPhone 8**+ smartphone, seized from

12  Phillips' residence on April 12, 2023. The phones are in the custody of the ATF in

13  Seattle. Based upon the facts set forth below, there is probable cause to search the subject

14  smartphones, as described above and in Attachment A, for evidence, fruits, and

15  instrumentalities of the above-listed violations, as described in Attachment B.

16         The facts in this affidavit are based on my training and experience, and

17  information obtained from other agents, detectives, officers, analysts, and witnesses. The

18  information outlined below is provided for the limited purpose of establishing probable

19  cause for the applied-for search warrant and does not contain all details or all facts of

20  which I am aware that relate to this investigation.

21                              **PROBABLE CAUSE**

22         **Identification of Dion Cooper as a Straw Purchaser of Firearms**

23         On January 29, 2023, an armed robbery occurred in the Rainier Valley area of

24  Seattle, Washington. During the robbery, a 25-year-old Asian female victim had just

25  arrived home and was unloading her car when three unidentified black males approached

26  her. One of the males pointed a handgun at her and demanded her belongings as another

27  suspect got in the driver seat of her car. The victim handed over her phone and purse and

28  the suspect punched her multiple times. The suspect in the driver's seat was unable to

AFFIDAVIT OF CATHERINE COLE – Page 3
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1   start the car and exited the vehicle. Fearing for her life, the victim jumped back in her car,

2   locked the doors, and drove away. The suspects chased her in a white sedan, but she was

3   able to elude them and eventually called 911. Officers with the Seattle Police Department

4   (SPD) responded but could not locate the suspects. The victim located a handgun – a

5   Glock Model 22 .40 caliber handgun – that the suspect dropped when he got inside her

6   vehicle and SPD officers recovered it.

7          Officers processed the firearm and submitted the information into a database of

8   firearms that had been recovered in crimes ("crime guns"). The database assists law

9   enforcement by tracing the purchase of a firearm back to its original purchaser, thereby

10   providing potential investigative leads following crimes during which firearms are

11   recovered. According to the crime gun database, the original purchaser of the recovered

12   Glock pistol was defendant Dion Jamar Cooper. Cooper purchased the firearm 50 days

13   earlier, on December 10, 2022, from Ben's Loans, a pawnshop located in Renton,

14   Washington. SPD officers learned from other law enforcement databases that Cooper was

15   linked to over 80 additional firearm purchases and had a now-expired Concealed Pistol

16   License (CPL).

17                          **Cooper's Firearm Purchase History**

18          After learning about this this robbery incident and other information about Cooper,

19   I suspected he may be a "straw purchaser" of firearms (*i.e.,* someone who purchases

20   firearms on behalf of other people). Although Cooper has been arrested for various

21   offenses, including domestic violence, theft in the third degree, burglary, rendering

22   criminal assistance, assault in the second degree (domestic violence), and possession of a

23   stolen firearm, he has no criminal convictions. Therefore, he is not a "prohibited person"

24   and may legally possess firearms.

25          I began to investigate Cooper's firearm purchase history and the extent to which

26   the firearms he purchased had been recovered and linked to crimes through the crime gun

27   databases. I learned that Cooper has purchased at least 107 firearms from various Federal

28   Firearms Licensees (FFLs) around the greater Seattle area during the period from

AFFIDAVIT OF CATHERINE COLE – Page 4
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

June 2021 through March 2023. Approximately 24 of these transactions involved multiple sales, meaning Cooper bought two or more firearms during the same transaction.[1] Many of these sales included purchases of four or more firearms. Many of the firearms that Cooper purchased were of similar makes and models, and in many cases the exact same make and model. Cooper purchased these firearms from at least nine FFLs.[2]

Of the at least 107 firearms Cooper purchased since June 2021, at least 21 have been recovered in crimes and traced. At least three more were recovered in criminal investigations but had not yet been submitted for tracing. All but two of these recovered firearms were found in the possession of someone other than Cooper, and usually the possessor was prohibited from possessing firearms.

The "time-to-crime" for the traced firearms (*i.e.,* the amount of time between the retail sale of a firearm and its recovery by law enforcement after the commission of a crime) ranged from between two days and 268 days. The ATF considers a time-to-crime of less than three years as a potential indicator of firearms trafficking. Significantly, I was not able to find a single instance in which Cooper reported any of the firearms he purchased lost or stolen.

Based on my training and experience, several aspects of Cooper's firearm purchases are consistent with straw purchasing, including: the large number of firearms that Cooper purchased in a short period of time; the fact that he would purchase multiple firearms of the exact same make and model during the same transaction and over several transactions; and that a large percentage of the guns he purchased ended up recovered at crime scenes in the possession of other persons with a relatively short time-to-crime span.

---

[1] Because not all multiple sales were reported by the FFLs, the number of firearms Cooper purchased is likely higher than 107.

[2] There is no national registry of firearm purchases, so agents identify firearm purchases by obtaining records from each individual FFL. Agents intend to investigate whether Cooper purchased firearms at other local FFLs.

AFFIDAVIT OF CATHERINE COLE – Page 5
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

When a person purchases a firearm from an FFL, that person is required to complete an ATF Form 4473. This is the form that is used to initiate the background check on the purchaser. Among other questions, the ATF Form 4473 asks whether the person completing the form is the "actual transferee/buyer of the firearm(s) listed on the form." The ATF Form 4473 further states in Box 21, Section a.: "**Warning:  You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you**." A person who answers this question falsely by affirming that he or she is the true buyer of the firearm when he or she is actually purchasing the firearm on behalf of another person has violated Title 18, United States Code, Sections 922(a)(6) and 924(a)(1)(A), by making a material false statement in connection with the acquisition of a firearm.

I reviewed the ATF Form 4473's related to Cooper's purchases of the above-referenced firearms. In each instance, Cooper indicated and checked the box affirming "yes" for Box 21, Section a., declaring he was purchasing the firearms for himself.

### Surveillance Operation Conducted on March 16, 2023

On March 16, 2023, J.L., a representative from Rehv Arms, an FFL located in Covington, Washington, contacted me to report that Cooper had filed an application to purchase three firearms and was undergoing a standard background check. The FFL was waiting for Cooper to call them to arrange to pick up the firearms. J.L. later told me that Cooper was scheduled to come to the store to obtain the firearms on March 21, 2023.

On that date, ATF agents conducted physical surveillance of Cooper during and after the firearms transaction at Rehv Arms. Cooper arrived at the store as the passenger in a Chevrolet Tahoe SUV registered to defendant De'ondre Lamontia Phillips, who is a convicted felon.[3] Agents were able to positively identify Phillips as the driver of the Tahoe.

---

[3] I have reviewed Phillips' criminal history and confirmed that he has criminal convictions for the felony offenses of *Violation of the Uniform Controlled Substances Act – Delivery of Heroin*, in King County Superior Court, under

AFFIDAVIT OF CATHERINE COLE – Page 6
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1    Cooper exited the passenger seat of the Tahoe and entered Rehv Arms alone,

2    while Phillips stayed in the vehicle. Cooper later exited the store carrying a large

3    cardboard box. He loaded the box into the Tahoe reentered the passenger seat. The Tahoe

4    then departed the store parking lot and drove to a Chevron gas station in Kent,

5    Washington. There, Phillips conducted a brief hand-to-hand transaction with an unknown

6    black male. This male approached the Tahoe and began counting money. Phillips

7    exchanged an unknown item for the cash.

8    The Tahoe then drove to the Mariposa Apartments in Federal Way, Washington.

9    Phillips opened the door to a garage, went inside the garage for a few minutes, and then

10   returned to the Tahoe carrying a silver shopping bag. The Tahoe then drove to a Wendy's

11   restaurant and ultimately to Cooper's apartment at 25819 26th Place South, Unit B204,

12   Kent, Washington. Cooper exited the passenger seat of the Tahoe carrying a black

13   backpack, multiple brown paper bags, and take-home food containers. Cooper entered the

14   apartment and went inside.

15   I later obtained the completed Form 4473 that Cooper filled out at Rehv Arms that

16   day. It reflected that Cooper purchased eight firearms instead of the three he had initially

17   requested. I believe these eight firearms were in the box that Cooper carried out of Rehv

18   Arms and loaded into the Tahoe. Cooper did not take the box out of the Tahoe when he

19   entered his apartment.

20   **Interviews with Ben's Loans and Rehv Arms Employees**

21   I went to Ben's Loans to collect numerous ATF Form 4473s from M.Z., an

22   employee. I showed M.Z. Cooper's Washington driver's license photo, and M.Z.

23   confirmed that the person depicted in the photo was who she knew as "Dion." M.Z. told

24   me that she is very familiar with Cooper and that recently he exclusively dealt with her in

25   terms of his firearms purchases at Ben's Loans. M.Z. said Cooper "seemed a little bit out

26

27   _____

28   cause number 14-1-03380-6, on or about September 25, 2015; and *Unlawful Possession of a Firearm in the First Degree* and *Assault in the Second Degree* (two counts), in King County Superior Court, under cause number 08-1-02727-5, on or about June 19, 2009.

AFFIDAVIT OF CATHERINE COLE – Page 7
USAO No. 2023R00390

1  of it lately," but that he never smelled like alcohol or marijuana when he came in to buy

2  firearms. M.Z said Cooper always paid for the guns with cash and that he always got a

3  ride to Ben's Loans from someone else. M.Z. described a dark colored SUV that Cooper

4  was associated with, which often drove him to the store and parked in the stall furthest

5  away from the store entrance. This vehicle matches the description of Phillips' Tahoe.

6       I also went to Rehv Arms to speak with the employees about Cooper. I asked them

7  to describe typical interactions with Cooper. S.M. said when Cooper first began

8  patronizing the store, S.M. thought he was either high on marijuana or just "slow."  S.M.

9  later came to believe Cooper "was being taken advantage of" and that he "wasn't very

10 smart." S.M. explained that the first time he came into Rehv Arms to purchase a firearm,

11 Cooper video-recorded the entire transaction on his phone. Cooper walked around the

12 store recording the shelves and gun cases as if he was recording the store's inventory.

13 According to S.M., on other occasions, Cooper was on Facetime with other unidentified

14 males and showed them firearms over Facetime for the males to comment on. S.M. said

15 Cooper typically comes into the store alone, but during one transaction in February 2023,

16 he was accompanied by two unknown males who asked the staff about purchasing

17 machineguns.

18      S.M. said Cooper always pays in cash and that he tries to "max out" the cash he

19 has on hand by spending it all during the transactions. Another employee, R.D., further

20 explained that Cooper will go in and purchase items and if he has any cash leftover, he

21 will spend it on something else like another firearm or accessories. The employees had

22 only seen Cooper arrive at the store in a dark-colored SUV.

23      S.M. explained that during one recent transaction with Cooper, S.M. took the

24 opportunity to advise Cooper of some recent changes to the ATF Form 4473 (which was

25 revised in December 2022). S.M. told Cooper, "Hey man, you're buying these for

26 yourself, right?" Cooper replied something to the effect of, "Yep, they're all for me."

27 S.M. further described another interaction with Cooper when S.M. noticed he was buying

28 duplicate makes and models of firearms that he had previously purchased. S.M. asked

AFFIDAVIT OF CATHERINE COLE – Page 8
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1   Cooper what happened to the guns he previously bought, to which Cooper responded

2   something to the effect of, "I lost a bunch of them," and, "All my shit got stolen."

3        I asked staff members what they believed Cooper was doing with the firearms he

4   purchased. They stated that he is likely selling them to other people. Based on S.M.'s

5   experience as an FFL employee, he was concerned that Cooper had falsely represented

6   himself as the actual buyer of the firearms and instead was purchasing firearms for others

7   to possess.

8        Based on my training and experience, I believed several aspects of Cooper's

9   purchases are consistent with straw purchasing, including: the large number of firearms

10  that Cooper purchased in a short period of time; that he purchased multiple firearms of

11  the exact same make and model during the same transaction and over multiple

12  transactions; that a large percentage of the guns he purchased ended up recovered at

13  crime scenes in the possession of other persons with a relatively short time-to-crime span;

14  that he paid in cash; that he was accompanied to the FFLs by other people who waited in

15  the parking lot instead of joining him inside the stores; and that he communicated with

16  others by Facetime and/or videotaped some of the transactions.

17  **Cooper's Applications to Purchase Additional Firearms**

18       In early April 2023, investigators obtained a state tracking warrant for Phillips'

19  Tahoe. The tracking data documented that on April 4, 2023, the Tahoe went to Cooper's

20  apartment and then drove to Ben's Loans FFL. On April 5, 2023, the Tahoe again drove

21  to Cooper's apartment and then to Ben's Loans FFL. The Tahoe later drove to the

22  location of the Rehv Arms FFL and eventually returned to Cooper's apartment.

23       I spoke with employees at Ben's Loans who confirmed that Cooper was at the FFL

24  on April 4th and April 5th. On April 4th Cooper completed the paperwork to purchase four

25  pistols: a Smith and Wesson Model M&P 15 AR rifle, two Glock 17 9mm caliber pistols,

26  and a Glock 23 .40 caliber pistol. On April 5th, Cooper filled out an ATF Form 4473 for

27  the purchase of an Anderson Arms Model AM-15 AR-style pistol.

28

AFFIDAVIT OF CATHERINE COLE – Page 9
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1    I also spoke with employees at Rehv Arms who confirmed that Cooper was at the

2    FFL on April 5th. Cooper filled out an ATF Form 4473 for the purchase of a Glock 21

3    10mm caliber pistol. The employees also informed me that on April 1st, Cooper was at

4    the FFL and requested them to build a firearm out of an AR upper receiver that Cooper

5    provided.

6                      **Investigative Activities on April 12, 2023**

7    I obtained a federal search warrant, issued by The Honorable Brian A. Tsuchida,

8    United States Magistrate Judge, authorizing the search of Cooper's person, residence, and

9    any recovered cell phones. *See* MJ23-165. In conjunction with this investigation, local

10   investigators obtained state search warrants, authorized by a King County Superior Court

11   Judge, to search Phillips' Tahoe and residence.[4]

12   On April 12, 2023, investigators conducted physical surveillance on Phillips and

13   Cooper. Phillips drove the Tahoe from his residence to Cooper's apartment. Cooper

14   entered the Tahoe and they drove to the Rehv Arms FFL. Cooper went inside of the store

15   alone and eventually returned to the Tahoe. According to Rehv Arms records, Cooper

16   purchased the following firearms at the store that day:

17   - Heckler & Koch, Model P2000SK .40 caliber handgun with SN 122-000326;

18   - Taurus, Model G3 9mm caliber handgun with serial number ADG486677;

19   - Glock 17 9mm caliber handgun with serial number KZS916;

20   - Girsan, Model MC P35, 9mm caliber handgun with SN T6368-22EU005584;

21   - Tisas M1911 .45 ACP caliber handgun with serial number T0620-22Z01842;

22   - Springfield Armory Model XD40 .40 S&W caliber handgun, SN XD300481;

23   - Glock 21 .45 ACP caliber handgun with serial number BYWC267.

24   Phillips then drove Cooper to Ben's Loans FFL. Cooper again entered the store

25   alone and left with what appeared to be three firearm boxes that he loaded inside of the

---

[4] Phillips lives at the Berkeley Heights Apartments at 22609 91st Way S, Unit #J102 in Kent, Washington. He is the sole leasee of the apartment and his Tahoe is regularly at the apartment complex, according to the apartment building staff and the tracking device on the Tahoe.

AFFIDAVIT OF CATHERINE COLE – Page 10
USAO No. 2023R00390

Tahoe. According to Bens Loans records, Cooper purchased the following firearms at the store that day:

- Glock 17 9mm caliber handgun with serial number AHPK009;

- Glock 17 9mm caliber handgun with serial number 00108GEN1; and

- Glock 23 .40 S&W caliber handgun with serial number UXU051.

Phillips then drove with Cooper to the garage unit at the Mariposa Apartments in Federal Way. Surveillance officers watched as Phillips opened the garage door using a key from a lanyard in his possession. Phillips appeared to enter the garage unit alone while Cooper stayed in the car. Officers observed Phillips exit the garage with what looked like the same large cardboard box that Cooper had carried out from the Rehv Arms FFL on March 21, 2023. Phillips placed the box inside the back seat of the Tahoe and drove away.

Phillips dropped Cooper off at a bus stop in Federal Way. Cooper boarded a bus and was contacted by officers at the Federal Way Transit Center. Cooper had one firearm on his person, a Glock 43X 9mm caliber handgun with serial number BYPN657, along with two loaded high-capacity drum magazines.

Shortly thereafter, the federal search warrant was executed at Cooper's apartment. No firearms were located inside the apartment. Based on my training and experience, the fact that Cooper had purchased over 100 firearms and had none of them in his apartment is further evidence that he was purchasing the firearms for other persons.

### Search Warrants Executed on Phillips' Vehicle, Residence, and Garage

Investigators continued to follow Phillips after he dropped Cooper off at the bus stop. Phillips eventually drove his Tahoe to a gas station in Kent. He was the only occupant of the Tahoe. When he exited the Tahoe at the gas station, officers attempted to contact Phillips. When Phillips saw the officers, he attempted to flee on foot, but after a short pursuit he was taken into custody. The subject smartphone, **a red Apple iPhone 13**, was seized from Phillips' person at the time of his arrest.

AFFIDAVIT OF CATHERINE COLE – Page 11
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

Officers searched the Tahoe pursuant to a state search warrant and located the following contraband evidence:

- FNH, Model Five-Seven, 5.7x28mm caliber pistol with serial number 386264899. This firearm was lying in open view on the driver's floorboard. The pistol was loaded with a magazine containing 19 rounds of 5.7x28mm caliber ammunition.

- Shadow Systems, Model XR920, 9mm Parabellum caliber pistol, with serial number SSX045847. This firearm was found in the back seat of the Tahoe in a small white box contained inside of a larger cardboard box. This appears to be the same box that officers observed Phillips take from the garage in Federal Way earlier that day.

- A 5.7mm firearm magazine found inside of small black cloth bag contained in a larger blue duffle bag. The duffle bag was found on the backseat of the Tahoe. Surveillance officers had observed Phillips carrying this same blue duffle bag from his apartment into the Tahoe earlier that morning.

- Controlled substances including: 106.6 grams of blue M30 pills (field-tested positive for fentanyl); 51.7 grams of methamphetamine (field-tested positive); along with drug packaging and a digital scale. Most of the controlled substances were found inside of the blue duffle bag.

Investigators also executed a state search warrant on Phillips' apartment. No one was located inside. Officers recovered the below-listed fifteen firearms at the apartment:

- Glock 19 9mm caliber handgun with serial number BUKK259 (purchased by Cooper on February 18, 2023);

- Glock 43X 9mm caliber handgun with serial number BYPN654 (purchased by Cooper on March 21, 2023);

- Heckler & Koch, Model P2000SK .40 caliber handgun (purchased by Cooper on April 12, 2023);

AFFIDAVIT OF CATHERINE COLE – Page 12
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

- Taurus G3 9mm caliber handgun with serial number ADG486677 (purchased by Cooper on April 12, 2023);

- Springfield Armory, Model XD40, .40 S&W caliber handgun with serial number XD300481 (purchased by Cooper on April 12, 2023);

- Glock 17 9mm caliber handgun with serial number AHPK009 (purchased by Cooper on April 12, 2023);

- Glock 21 .45 ACP caliber handgun with serial number BYWC267 (purchased by Cooper on April 12, 2023);

- Tisas M1911 .45 ACP caliber handgun with serial number T0620-22Z01842 (purchased by Cooper on April 12, 2023);

- Girsan MCP35 handgun serial #T6368-22EU05584 (purchased by Cooper on April 12, 2023);

- Glock 23 .40 S&W caliber handgun with serial number UXU051 (purchased by Cooper on April 12, 2023);

- Glock 17 9mm caliber handgun with serial number 00108GEN1 (purchased by Cooper on April 12, 2023);

- Glock 17 9mm caliber handgun with serial number KZS916 (purchased by Cooper on April 12, 2023)

- Glock 23 .40 S&W caliber handgun with serial number PBB239;

- Romarm Cugir, Mini Draco 7.62 x 39mm caliber AK-47 variant pistol with serial number ROA22DG5723;

- Ruger PC Charger 9mm handgun with serial number 91335066; and

- Ruger Five-Seven 5.7 x 28mm caliber handgun.

Officers also recovered evidence of drug trafficking inside of Phillips' apartment:

- 518.1 grams of blue M30 pills (field-tested positive for fentanyl);

- 246.4 grams of methamphetamine (field-tested positive); and

- Over $22,000 in cash.

AFFIDAVIT OF CATHERINE COLE – Page 13
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

During the search of the apartment, investigators also recovered **a black Apple iPhone 8+** smartphone on the top shelf of the master bedroom closet. The closet also contained controlled substances, the $22,000 in cash, two firearms, and a notebook containing Phillips' handwritten personal identifying information along with log-in/user passwords for various financial accounts. The master bedroom itself contained additional controlled substances, firearms, ammunition, and firearms receipts with Cooper's name on them.

As investigators were nearing the completion of the search, a female (RDK) arrived at Phillips' apartment. RDK stated that she periodically stayed at the apartment with Phillips. She explained that she had her own closet in the apartment's bedroom and that the only items in the apartment that belonged to her were female clothes, shoes, an iPad, and some cash that was located on the top of the refrigerator. She also said that she put some cash inside a jacket pocket in the other bedroom closet.[5] RDK denied any knowledge of the firearms that were present inside the apartment.

Local investigators also obtained a state search warrant for the above-referenced garage in Federal Way where Phillips had been seen twice before, including earlier that day. The warrant was executed on April 12, 2023. Officers recovered:

- Romarm Cugir, Micro Draco AK-47 variant 7.62 x 39mm caliber pistol with serial number PMD-33509 (purchased by Cooper on March 21, 2023);

- Ruger, Model 10/22, .22LR caliber rifle with serial number 251-20165;

- Derya Arms, Model VRPA40, magazine fed 12-gauge shotgun with serial number R245194;

- Privately Manufactured 5.56 x 45mm caliber short-barreled rifle with no serial number;

- Privately Manufactured 5.56 x 45mm caliber short-barreled rifle with no serial number; and

---

[5] Officers recovered a large sum of cash from the pocket of a men's jacket hanging inside this second closet, which also contained numerous men's clothing items, a firearm, ammunition, narcotics, a digital scale, and other drug paraphernalia.

AFFIDAVIT OF CATHERINE COLE – Page 14
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1

2    • Hundreds of rounds ammunition and various firearm accessories.[6]

3    **Interview of Cooper and his Admission of Straw Purchasing**

4    On April 12, 2023, at approximately 5:35 p.m., I interviewed Cooper along with

5    another officer at the Kent City Jail., where Cooper had been booked on a violation for

6    carrying a firearm without a CPL. We read Cooper his *Miranda* rights. He waived those

7    rights and agreed to speak with us. The full interview was recorded.

8    Cooper ultimately confessed to being a straw purchaser, that is, purchasing

9    numerous firearms for other people. However, he initially lied about his conduct. For

10   example, Cooper claimed that he purchased large quantities of firearms because he liked

11   guns. He said he bought the same type of firearms repeatedly because he liked going out

12   to secluded areas to fire the guns at the same time. He claimed that he no longer had any

13   of the guns he purchased because they had been stolen from his car and/or burned in a

14   house fire in Lynnwood. When asked where the guns were that he had purchased earlier

15   that day, Cooper said that he dropped the guns off at a friend's house. He refused to

16   identify the friend because he did not want to "incriminate" him.

17   After further questioning, Cooper admitted that he had been buying firearms for

18   Phillips and that he lied on the ATF Form 4473's by claiming he was purchasing the guns

19   for himself. According to Cooper, he began buying guns for Phillips sometime in 2022.

20   He denied knowing that Phillips was a convicted felon, although he acknowledged being

21   friends with Phillips since they were teenagers. Cooper said he had bought "quite a few"

22   firearms for Phillips in total. Cooper explained that Phillips would give him the money

23   for the firearms and drive Cooper to the FFL stores. Cooper would pick out the guns

24

25

---

26   [6] I am a certified ATF Interstate Firearms and Ammunition Nexus Expert, who has been trained in the recognition of
     firearms and ammunition and their origin of manufacture. I examined all the above-referenced firearms. I was able

27   to determine that, with the exception of the two privately made firearms, all the firearms were not manufactured in
     the State of Washington. Based upon my experience, knowledge, and research, it also my opinion that all the

28   firearms meet the definition of a "firearm" under Title 18, United States Code, Section 921(a)(3). It is also my
     opinion that, because the firearms were not manufactured in the State of Washington, they therefore must have
     traveled in interstate commerce if they were received or possessed in the State of Washington.

AFFIDAVIT OF CATHERINE COLE – Page 15
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1    himself and fill out the paperwork. He would then wait for the "proceed" on the
2    background check before going back to the FFL stores to pick-up the firearms. Cooper
3    claimed that Phillips never paid him extra money for straw purchasing the firearms.

4         Although Cooper denied knowing that Phillips was a convicted felon, I submit that
5    Cooper had reasonable cause to believe that Phillips could not legally possess firearms.
6    First, as noted above, Cooper admitted to having been friends with Phillips since they
7    were teenagers. Second, the surreptitious nature of the way Cooper purchased the
8    firearms on Phillips' behalf is strong circumstantial evidence that Cooper knew Phillips
9    could not legally purchase or possess firearms, including that: Cooper repeatedly lied on
10   the ATF Form 4473's; Phillips remained in his vehicle while Cooper purchased the
11   firearms on his behalf; and the large volume of transactions conducted in this manner
12   over a substantial period. Lastly, Cooper initially told me that he did not want to identify
13   Phillips because he did not want to "incriminate" him, which only makes sense if Cooper
14   knows that Phillips could not legally possess the firearms.

15                              **Phillips' Smartphones**

16        As described above, at the time of his arrest on April 12, 2023, Phillips was in
17   possession of a red Apple iPhone 13 smartphone. Phillips was observed speaking on the
18   red Apple iPhone the morning of April 12, 2023, as he carried a blue duffle bag from his
19   apartment and placed it into the Tahoe, as described above. The same blue duffle bag was
20   found to contain numerous items of contraband, including controlled substances, drug
21   packaging materials and a digital scale, assorted ammunition, and a 5.7mm firearm
22   magazine.

23        As further described above, investigators seized a black Apple iPhone 8+
24   smartphone from the master bedroom closet in Phillips' apartment. This closet and
25   bedroom contained multiple firearms, ammunition, controlled substances, and cash
26   proceeds, among other contraband and evidence of criminal activity.

27        Based upon my training and experience, I know the following about private
28   firearm sales, including private sales occurring in illegal secondary markets:

AFFIDAVIT OF CATHERINE COLE – Page 16
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

a.      A prohibited person cannot legally purchase a firearm from an FFL. Two of the ways that a prohibited person can illegally acquire a firearm are through a private sales or straw purchases.

b.      When a person sells a firearm through a private sale, his phone will commonly maintain records reflecting names or nicknames, addresses, vehicles, and/or telephone numbers of the person to whom he sold the firearm. The phone will commonly contain communication records, such as call logs or text messages, arranging to pick up the firearm and negotiating the price of the firearm.

c.      When a person sells a firearm, it is common for the seller to send the buyer a photograph of the firearm. Similarly, a prohibited person might send a photograph or other details about a firearm to the straw buyer so that the straw buyer knows which type of firearm to purchase for the prohibited person.

d.      When a straw buyer arranges to purchase a firearm on someone else's behalf, he is likely to keep records of those transactions, such as co-conspirator contact information, receipts, notes, ledgers, owner's manuals, and communications arranging the purchase, payment, and transfer of the firearm. One of the places that these records are commonly kept is a straw purchaser's residence; the other common place is a straw purchaser's wireless phone.

e.      In addition to text messages and phone calls, it is common for people to arrange firearm sales by communicating through social media applications, such as Snapchat, Instagram, and Facebook.

Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use

AFFIDAVIT OF CATHERINE COLE – Page 17
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1   them to maintain contact with their suppliers, distributors, and customers. They prefer

2   cellular telephones because, first, they can be purchased without the location and personal

3   information that land lines require. Second, they can be easily carried to permit the user

4   maximum flexibility in meeting associates, avoiding police surveillance, and traveling to

5   obtain or distribute drugs. Third, they can be passed between members of a drug

6   conspiracy to allow substitution when one member leaves the area temporarily. I also

7   know that it is common for drug traffickers to retain in their possession phones that they

8   previously used, but have discontinued actively using, for their drug trafficking business.

9   Based on my training and experience, the data maintained in a cellular telephone used by

10  a drug dealer is evidence of a crime or crimes. This includes the following:

11          a.      The assigned number to the cellular telephone (known as the mobile

12  directory number or MDN), and the identifying telephone serial number

13  (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN),

14  (International Mobile Subscriber Identity, or IMSI), or (International Mobile

15  Equipment Identity, or IMEI) are important evidence because they reveal the

16  service provider, allow us to obtain subscriber information, and uniquely identify

17  the telephone. This information can be used to obtain toll records, to identify

18  contacts by this telephone with other cellular telephones used by co-conspirators,

19  to identify other telephones used by the same subscriber or purchased as part of a

20  package, and to confirm if the telephone was contacted by a cooperating source or

21  was intercepted on a wiretap here or in another district.

22          b.      The stored list of recent received calls and sent calls is important

23  evidence. It identifies telephones recently in contact with the telephone user. This

24  is valuable information in a drug investigation because it will identify telephones

25  used by other members of the organization, such as suppliers, distributors, and

26  customers, and it confirms the date and time of contacts. If the user is under

27  surveillance, it identifies what number he called during or around the time of a

28  drug transaction or surveilled meeting. Even if a contact involves a telephone user

AFFIDAVIT OF CATHERINE COLE – Page 18
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

   c. Stored text messages, to include alternative communication apps (such as WhatsApp, Signal, Wickr, etc) are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

   d. Photographs (and videos) on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs.  Photographs can also be useful for disposition of drug proceeds and identifying assets purchased with drug proceeds.

   e. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

   f. It is common for drug traffickers to use encrypted means of communication, such as WhatsApp, Signal, Wickr, and Telegram, to attempt to avoid detection by law enforcement.  It is common for drug traffickers to install and use these apps on their phones in order to make encrypted calls and send encrypted messages.

//
//
//

AFFIDAVIT OF CATHERINE COLE – Page 19
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

### **CELLULAR PHONES OR WIRELESS COMMUNICATION DEVICES**

Cellphones or "Wireless Communication Devices" includes cellular telephones and other devices such as tablets (e.g. iPads and other similar devices) used for voice and data communication through cellular or Wi-Fi signals. These devices send signals through networks of transmitter/receivers, enabling communication with other wireless devices or traditional "land line" telephones. Many such devices can connect to the Internet and interconnect with other devices such as car entertainment systems or headsets via Wi-Fi, Bluetooth or near field communication (NFC). In addition to enabling voice communications, wireless communication devices offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books" or "contact lists;" sending, receiving, and storing short message service (SMS) and multi-media messaging service (MMS) text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; and storing dates, appointments, and other information on personal calendars.

Based upon my training and experience, all these types of information may be evidence of crimes under investigation. Furthermore, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Phone was used, the purpose of its use, who used it, and when. All of these types of information could constitute forensic evidence as well. Stored e-mails and text messages not only may contain communications related to crimes, but also help identify the participants in those crimes. Address books and contact lists may help identify co-conspirators. Similarly, photographs on a cellular telephone may help identify co-conspirators, either through his or her own photographs, or through photographs of friends, family, and associates. Digital photographs also often have embedded location data GPS information that identifies where the photo was taken. This location information is helpful because, for example, it can show where co-conspirators meet,

AFFIDAVIT OF CATHERINE COLE – Page 20
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  where they travel, and where assets might be located. Calendar data may reveal the

2  timing and extent of criminal activity.

3    A cellphone used for cellular voice communication will also typically contain a

4  "call log" or "stored list of recent, received, sent or missed calls" which records the

5  telephone number, date, and time of calls made to and from the phone. The stored list of

6  recent received, missed, and sent calls is important evidence. It identifies telephones

7  recently in contact with the telephone user and may help identify co-conspirators,

8  establish a timeline of events and/or identify who was using the phone at any particular

9  time.

10    In addition, wireless communication devices will typically have an assigned

11  number and identifying serial number such as an ESN, MIN, IMSI, or IMEI number that

12  identifies the particular device on any network. This identifying information may also

13  include the device's assigned name (as assigned by the user) and network addresses such

14  as assigned IP addresses and MAC addresses. I know based on my training and

15  experience that such information may be important evidence of who used a device, when

16  it was used, and for what purposes it may have been used. This information can be used

17  to obtain toll records and other subscriber records, to identify contacts by this telephone

18  with other telephones, or to identify other telephones used by the same subscriber or

19  purchased as part of a package.

20    Many wireless communication devices including cellular telephones such as

21  iPhones, iPads, Android phones, and other "smart phones" as well as tablet devices such

22  as Apple iPads may also be used to browse and search the Internet. These devices may

23  browse and search the Internet. These devices may browse and search the internet using

24  traditional web browsers such as Apple's Safari browser or Google's Chrome browser as

25  well as through third-party applications such as Facebook, Twitter and other that also

26  provide the ability to browse and search the Internet. Based on my training and

27  experience, I know that Internet browsing history may include valuable evidence

28  regarding the identity of the user of the device. This evidence may include online user

AFFIDAVIT OF CATHERINE COLE – Page 21
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  names, account numbers, e-mail accounts, and bank accounts as well as other online

2  services. Internet browsing history may also reveal important evidence about a person's

3  location and search history. Search history is often valuable evidence that may help

4  reveal a suspect's intent and plans to commit a crime or efforts to hide evidence of a

5  crime and may also help reveal the identity of the person using the device.

6         Cellphones and other wireless communication devices are also capable of

7  operating a wide variety of communication application or "Apps" that allow a user to

8  communicate with other devices via a variety of communication channels. These

9  additional communication channels include traditional cellular networks, voice over

10 Internet protocol, video conferencing (such as FaceTime and Skype), and wide variety of

11 messaging applications (such as SnapChat, What'sApp, Signal, Telegram, Viber and

12 iMessage). I know based on my training and experience that here are hundreds of

13 different messaging and conferencing applications available for popular cellular

14 telephones and that the capabilities of these applications vary widely for each application.

15 Some applications include end-to-end encryption that may prevent law enforcement from

16 deciphering the communications without access to the device and the ability to "unlock"

17 the device through discovery of the user's password or other authentication key.

18        Other communication applications transmit communications unencrypted over

19 centralized servers maintained by the service provider and these communications may be

20 obtained from the service provider using appropriate legal process. Other applications

21 facilitate multiple forms of communication including text, voice, and video conferencing.

22 Information from these communication apps may constitute evidence of crimes under

23 investigation to the extent they may reveal communications related to the crime or

24 evidence of who the user of the device was communicating with and when those

25 communications occurred. Information from these communication apps may also reveal

26 alias names used by the device owner that may also lead to the other evidence.

27        I know based on my training and experience that obtaining a list of all the

28 applications present on a cellphones may provide valuable leads in an investigation. By

AFFIDAVIT OF CATHERINE COLE – Page 22
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1 determining what applications are present on a device, an investigator may conduct
2 follow-up investigation including obtaining subscriber records and logs to determine
3 whether the device owner or operator has used each particular messaging application.
4 This information may be used to support additional search warrants or other legal process
5 to capture those communications and discover valuable evidence.

6      Cellphones and other wireless communication devices may also contain
7 geolocation information where the device was a particular times. Many of these devices
8 track and store GPS and cell-site location data to provide enhanced location based
9 services, serve location-targeted advertising, search results, and other content. Numerous
10 applications available for wireless communication devices collect and store location data.
11 For example, when location services are enabled on a handheld mobile device, many
12 photo applications will embed location data with each photograph taken and stored on the
13 device. Mapping applications such as Google Maps may store location data including
14 lists of locations the user has entered into the application. Location information may
15 constitute evidence of the crimes under investigation because that information may reveal
16 whether a suspect was at or near the scene of a crime at any given moment and may also
17 reveal evidence related to the identity of the user of the device.

18      Based on my training and experience, and research, I know that cellular phones
19 like the Target Phone have capabilities that allow them to function as a wireless
20 telephones, digital camera, portable media player, GPS navigation device, and "PDA." In
21 my training and experience, examining data stored on devices of this type can uncover,
22 among other things, evidence that reveals or suggests who possessed or used the device.
23 In my training and experience, smart phones can act as mini-computers in that they have
24 many of the functionalities of traditional computers.

25      Searching a cellular phone or wireless communication device is frequently
26 different that conducting a search of a traditional computer. Agents and forensic
27 examiners will attempt to extract the contents of the cellular phone or wireless
28 communication device using a variety of techniques designed to accurately capture the

AFFIDAVIT OF CATHERINE COLE – Page 23
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  data in a forensically sound manner in order to make data available to search of items

2  authorized by the search warrant. This may involve extracting a bit-for-bit copy of the

3  contents of the device or, if such an extraction is not feasible for any particular device,

4  the search may involve other methods of extracting data from the device, such as copying

5  the device's active user files (known as a logical acquisition) or copying the device's

6  entire file system (known as a file system acquisition). If none of these methods are

7  supported by the combination of tools available to the examiner and the device to be

8  searched, the agents and examiners may conduct a manual search of the device by

9  scrolling through the contents of the device and photographing the results. Based on the

10  foregoing and consistent with Rule 41(e)(2)(B), the warrant I am applying for would

11  permit seizing, imaging, or otherwise copying the Target Phone and would authorize a

12  later review of the media or information consistent with the warrant. The later review

13  may require techniques, including but not limited to computer-assisted scans of the entire

14  medium, that might expose many parts of a hard drive to human inspection in order to

15  determine whether it is evidence described by the warrant.

## CONCLUSION

17      Based on the foregoing, I believe there is probable cause that evidence, fruits, and

18  instrumentalities of the above-listed crimes (as further described in Attachment B) is

19  contained in the subject smartphone (as described in Attachment A).


CATHERINE COLE
Digitally signed by CATHERINE
COLE
Date: 2023.05.02 11:37:30 -07'00'

Catherine Cole, Special Agent
Alcohol, Tobacco, Firearms, and Explosive (ATF)


The above-named agent provided a sworn statement attesting to the truth of the

contents of the foregoing affidavit on the _5th___ day of May, 2023.


S. KATE VAUGHAN
United States Magistrate Judge

AFFIDAVIT OF CATHERINE COLE – Page 24
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970